IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| FIELDD PTY LTD,<br>106 E. 6th Street, Suite 900 – 104<br>Austin, TX 78701,<br><br>   Plaintiff,<br><br>v.<br><br>JESSICA DUARTE,<br><br>   Defendant. | Civil Action No. 1:23-cv-00098-LY |

### FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Fieldd PTY LTD ("Fieldd" or "Plaintiff"), through counsel, alleges as follows for its Complaint against Defendant Jessica Duarte ("Defendant"), registrant of the domain FIELDD.com.

### NATURE OF THE SUIT

1. This is an action for cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a).

2. Plaintiff's intellectual property rights in the distinctive FIELDD mark have been deliberately infringed through the bad faith registration and use of the domain FIELDD.com, which is confusingly similar to the FIELDD mark, and which Defendant has used in a manner that has and will continue to cause consumer confusion.

### PARTIES

3. Fieldd PTY LTD is a company organized and existing under the laws of Australia with a principal business address of 106 E. 6th Street, Suite 900 – 104, Austin, TX 78701.

4. Defendant Jessica Duarte is an individual resident of Austin, Texas, and the current registrant of the domain FIELDD.com. Attached hereto as Exhibit 1 is a current Whois record for the domain FIELDD.com, demonstrating Defendant's current ownership.

## JURISDICTION, VENUE AND JOINDER

5. This is a civil action for federal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a).

6. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

7. Plaintiff's claims against Defendant are based on Defendant's unauthorized use of the FIELDD trademark in the registration and use of the domain FIELDD.com, which took place within this judicial district.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as Defendant resides in this judicial district, and a substantial part of the events giving rise to the claim occurred herein.

## FIELDD'S RIGHTS

9. Plaintiff first began using the FIELDD mark on January 20, 2019, when it publicly launched its software service applications designed for mobile service providers.

10. Plaintiff provides its products and services to clients across many industries, from mobile oil change to photography. Its software is easily accessible—available for desktops and tablets, as well as downloadable from Apple and Android app stores.

11. Plaintiff's services are internationally available, and are used extensively—with more than 127,000 end users in 20 countries, including Australia, the United States, and Canada.

Plaintiff's services were first available within the United States at least as early as 2019.

12. In 2019, Plaintiff acquired the domain name FIELDD.co, and that same year began using the domain to resolve to a website promoting Plaintiff's products and services under the FIELDD mark. The website at FIELDD.co has been active ever since, to promote Plaintiff's products and services, and has attracted significant attention, with up to 400,000 unique visitors in a single month.

13. In addition to FIELDD.co, Plaintiff has acquired numerous other domains to promote and offer its products and services, including public-facing websites at FIELDD.com.au, FIELDD.ca, FIELDD.me, and FIELDD.app; a dedicated development domain at FIELDD-STAGING.com; a dedicated email domain at FIELDD-MAIL.com; and payment pages at FIELDDPAY.com and FIELDDPAY.co.

14. The purchasing public recognizes that the FIELDD mark is indicative of the origin of the services promoted by Plaintiff. Thus, consumers have come to recognize that any marks, words, and/or domain names containing FIELDD belong to Plaintiff and are indicative of Plaintiff as the source of the marks and associated goods and services.

15. The FIELDD mark has become famous and/or distinctive throughout the United States in connection with Plaintiff's services.

16. Based on Plaintiff's continuous use of the FIELDD mark in commerce in association with providing software service applications designed for mobile service providers, the FIELDD mark is entitled to common law trademark rights.

## THE PARTIES' INTERACTIONS

17.     On May 28, 2014, Defendant and another individual, Paula Jones, jointly formed a limited liability company established under the laws of Texas, called Fieldd Service Software, L.L.C. ("FSS").

18.     The domain FIELDD.com was initially registered in 2014. Historical Whois records reflect that, at last as early as July 2014, the domain was registered to the FSS as the registrant organization. Attached as Exhibit 2 is a historical Whois record for FIELDD.com from July 2014. Defendant has confirmed that though the Whois records reflect "Fieldd Software, L.L.C.," that was a typo, and the true entity was FSS.

19.     On December 27, 2017, Defendant and Ms. Jones filed for termination of FSS. Attached as Exhibit 3 is a copy of that termination filing.

20.     At least as early as January 2019, the website at FIELDD.com displayed no substantive content, other than to acknowledge that FSS was not offering services. Attached as Exhibit 4 is an archival record of the FIELDD.com website dated January 28, 2019, stating "Sorry We're Closed[.] We are not planning further development of Fieldd."

21.     Upon information and belief, based upon the termination of FSS as a registered business, and the website records demonstrating that the business was closed and had no plan to provide services, any trademark rights FSS might have owned in its name were abandoned as of at least January 28, 2019.

22.     In February 2020, Plaintiff's Chief Executive Officer reached out to Defendant electronically, understanding her to be affiliated with the then-registrant of the domain, FSS. In a series of exchanges, Defendant indicated that the domain could be purchased for $9,500, which she claimed reflected the cost for acquiring the domain.

23. Defendant has since informed Plaintiff that the *actual* price at which FSS acquired the domain was $1,000 plus escrow fees.

24. At that point, in 2020, no negotiations were undertaken for the purchase of FIELDD.com.  Plaintiff did not accept the domain for the $9,500 price, nor did it make a counter-offer.

25. Upon information and belief, between 2020 and November 2022, neither FSS nor Defendant made any use of the domain FIELDD.com.  No substantive content was displayed at the domain, and the domain was not configured for email use.

26. On June 22, 2022, Plaintiff's CEO reinitiated contact with Defendant, via text message.  His text message confirmed that Plaintiff was still using FIELDD, and was in the U.S. market.

27. As the representative of FSS that Plaintiff's CEO contacted in 2020, Defendant necessarily knew that Plaintiff had been using the FIELDD mark for over two years at that point—while Defendant was making no use of any FIELDD mark or the FIELDD.com domain name.

28. Receiving no response to the June 2022 text message, Plaintiff's CEO reached out again on July 12, 2022, and again on August 25, 2022, seeking to speak with Defendant.

29. Sometime around or after the August text message, the FIELDD.com domain name was transferred to a privacy service, which concealed the registrant information.  *Compare* Exhibit 5 (historical Whois record from August 18, 2022, reflecting the domain registrant and organization as Jessica Duarte as part of FSS) *to* Exhibit 6 (historical Whois record from November 23, 2022, reflecting the domain registrant as the privacy service Domains By Proxy, LLC).

30. Plaintiff has since learned that at the time of this transfer to the privacy service, the registrant of FIELDD.com was changed from FSS with Defendant as its representative, to Defendant as an individual.

31. Defendant has represented that the transfer to the privacy service was to avoid what she characterized as "harass[ment]" by Plaintiff's CEO. This claim is belied by the next communication between the parties, when Plaintiff's CEO then texted again on October 17, 2022, expressly stating that he wanted to discuss the domain. Defendant replied, thus acknowledging her continued relationship with the domain.

32. In her reply in October 2022, Defendant indicated that the FIELDD.com domain was for sale. Plaintiff's CEO inquired as to the price, and Defendant confirmed that the price was now $32,000—an exponential increase from the $9,500 quoted in 2020—and which coincided with Plaintiff's increased use of the FIELDD brand. When Plaintiff's CEO inquired as to the increased cost, Defendant responded "I don't believe I have to make my case or explain my thought process."

33. Through ongoing contacts between October 17 and November 18, 2022, Plaintiff attempted to complete negotiations to purchase the fieldd.com domain name.

34. On November 18, 2022, Defendant contacted Plaintiff's CEO and indicated that the domain was still for sale.

35. Shortly thereafter, on November 18, 2022 at 3:30pm CT, Plaintiff's CEO informed Defendant that her efforts to extort an unreasonable asking price for the domain using Plaintiff's mark constituted cybersquatting.

36. Just over an hour after Plaintiff expressed its cybersquatting concerns, Defendant converted the webpage at FIELDD.com, which had been dormant for more than three years, into a new WordPress site.

37. The day after Plaintiff expressed its cybersquatting concerns, November 19, 2022, Defendant filed paperwork seeking to adopt "Fieldd Fence & Deck" as a d/b/a to an existing entity The Boardwalk Home Services Co., L.L.C., which, on information and belief, is owned jointly by Defendant and Ms. Jones. Attached as Exhibit 7 is a copy of that filing.

38. Despite purporting to have adopted the name Fieldd Fence & Deck over two months ago, the website for The Boardwalk Home Services Co., L.L.C. makes no mention of "Fieldd." Attached as Exhibit 8 is a printout of the The Boardwalk Home Services Co., L.L.C. website, taken January 26, 2023, showing no use of its purported new name. Attached as Exhibit 9 is a similar printout, taken March 3, 2023, still showing no use of the purported new name.

39. On November 22, 2022, at 2:05pm CT, Plaintiff sent a demand letter to Defendant, formally explaining its position on cybersquatting.

40. At the time the demand letter was sent, Plaintiff's CEO navigated to FIELDD.com and found no substantive content. However, when Plaintiff's CEO checked again four hours later, a website purporting to offer services for "Fieldd Fence & Deck" was now live. Though the website was live, it lacked substantive content with respect to its purportedly primary services for fencing and decking. Even now, over two months after the website went live, those pages lack substantive content.



Attached as Exhibit 10 and 11 are additional screenshots of the "fencing" and "decking" subpages of FIELDD.com.

41. On November 23, 2022, "Duarte, Jessica A DBA Fieldd Fence & Deck" filed a U.S. trademark application for the mark FIELDD FENCE & DECK. As a specimen of use, Defendant submitted a screenshot of the webpage at FIELDD.com, which does not actually include information promoting the relevant services.

42. On November 25, 2022, Plaintiff's CEO reached out to Ms. Jones and Defendant, requesting a reply so that the dispute could be settled "on an amicable basis." Both Ms. Jones and Defendant responded, citing the flurry of activity surrounding "Fieldd Fence & Deck" to claim that "your cybersquatting issue is invalid."

43. Upon information and belief, based on the timing of the filings, the lack of substantive material promoting actual services at the FIELDD.com website, and the failure to

actually adopt the name Fieldd Fence & Deck, this website, business filing, and trademark filing were all part of a sham, pretending to use FIELDD.com to avoid liability for cybersquatting and/or trademark infringement.

44. On December 23, 2022, Plaintiff filed a complaint with the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO"), under the Uniform Domain Name Dispute Resolution Policy.

45. On December 29, 2022, WIPO provided a "Notice of Registrant Information," removing the concealment of the domain registrant through the privacy service, and identifying the registrant as Defendant—a change from the August 2022 records identifying FSS.

46. On January 25, 2022, Defendant filed a response to the WIPO complaint, along with a declaration in which she confirmed various relevant facts, including that: (1) FSS had been listed as the registrant organization, and was an entity jointly owned between herself and Paula Jones; (2) she and Ms. Jones dissolved the company in 2017; (3) the domain was no longer in use as of at least February 16, 2020; (4) the domain originally cost only $1,000—a tiny fraction of her $32,000 asking price; and (5) she made the trademark and business entity filings in response to Plaintiff's cybersquatting claims.

47. Defendant's WIPO declaration also included numerous demonstrably false statements, including that (1) she had always been the registrant of the domain name, despite numerous years in which it was registered to the separate legal entity FSS; (2) she maintained the FIELDD.com domain name notwithstanding its disuse so that she could continue to use her @FIELDD.com email address, despite MX records demonstrating that the domain was *not* configured for email use; and (3) she employed a privacy service in the fall of 2022 to avoid contact

from Plaintiff's CEO, despite the fact that Plaintiff's CEO already had her contact information and had never used the domain records as a means of contacting her.

48. In light of the numerous factual issues raised by Defendant's response, which WIPO proceedings do not enable parties to explore through discovery or live testimony, concurrently with this filing Plaintiff has sought to terminate the WIPO proceeding in favor of resolving this dispute through the present litigation.

**DEFENDANT'S BAD FAITH USE, REGISTRATION AND/OR TRAFFICKING**

49. In the fall of 2022 (sometime after August 18, 2022), the registration of FIELDD.com was transferred to a privacy service, and the registrant was changed from FSS (a legal entity owned jointly by Defendant and Ms. Jones) to Defendant as an individual.

50. At the time the FIELDD.com domain name was transferred to Defendant and her identifying information was concealed from public records, Defendant was aware of years-long use of the FIELDD mark by Plaintiff, and of Plaintiff's interest in acquiring the domain.

51. At the time the domain name was transferred to Defendant and her identifying information was concealed from public records, the domain FIELDD.com was not in use, and had not been in use for several years.

52. Upon information and belief, Defendant registered the domain name to a privacy service in 2022 in order to prevent Plaintiff from being able to identify her as the individual legally responsible for FIELDD.com, before seeking the exorbitant price from Plaintiff for the domain.

53. Shortly after the domain name was transferred to Defendant and her identifying information was concealed from public records, Defendant offered to sell the domain to Plaintiff for $32,000, which far exceeded both the original price for the domain ($1,000 plus escrow fees) and the price she had requested just two years earlier ($9,500).

10

54. Upon information and belief, the domain price of $32,000 was based on Defendant's knowledge of Plaintiff's ownership of FIELDD trademark rights, and an effort to profit from those rights.

55. The use of the FIELDD mark within FIELDD.com and the associated website is without authorization from Plaintiff.

56. Upon information and belief, the FIELDD.com domain does not reflect the legal name of Defendant or any business affiliated Defendant, and the trademark application, website, and business filing utilizing the FIELDD mark are part of a sham effort to create a façade of actual use, to conceal Defendant's cybersquatting and/or trademark infringement.

57. Upon information and belief, Defendant has not engaged in bona fide noncommercial or fair use of the FIELDD mark in a website accessible at FIELDD.com.

58. Upon information and belief, Defendant used a privacy service that replaced her contact information with the privacy service information, in an effort to avoid liability as the owner of a cybersquatted domain name.

**ACTUAL CONSUMER CONFUSION ARISING FROM DEFENDANT'S CONDUCT**

59. Plaintiff has already suffered harm from Defendant's unauthorized use of the FIELDD mark, in the form of actual consumer confusion.

60. Numerous consumers, including Plaintiff's customers who are well acquainted with Plaintiff's services, have been confused between Plaintiff's and Defendant's use of the FIELDD mark.

61. As of November 25, 2022, one of Plaintiff's customers, using Plaintiff's software to provide its own customers with service booking information, misdirected its customers to FIELDD.com, believing the site to be affiliated with Plaintiff.

62. On or about December 1, 2022, one of Plaintiff's customers requested "information in the custody of FIELDD.com," believing the site to be affiliated with Plaintiff.

63. As of February 24, 2023, another of Plaintiff's customers misdirected its own customers to FIELDD.com, believing the site to be affiliated with Plaintiff.

64. Defendant is aware of these instances of actual confusion, having received at least one misdirected communication from a consumer, intended for Plaintiff.

65. The pages displayed at FIELDD.com are likely to be confused, and have been confused, with Plaintiff's legitimate online location at FIELDD.co.

## COUNT ONE:
### (Violation of the Federal Anti-Cybersquatting Consumer Protection Act)

66. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

67. Plaintiff's FIELDD mark is famous and/or distinctive and was famous and/or distinctive, and entitled to protection, prior to the time of registration of the FIELDD.com domain to Defendant.

68. Defendant's domain name FIELDD.com is identical and/or confusingly similar to Plaintiff's FIELDD mark, as it merely appends a top-level domain name that bears no trademark significance.

69. The aforesaid acts by Defendant, including the concealment of herself as the new registrant of the FIELDD.com domain immediately prior to creating a sham website and seeking an exorbitant price for the domain from the mark holder, constitute registration, maintenance, trafficking in, or use of domain names that are confusingly similar to Plaintiff's FIELDD mark, with bad faith intent to profit therefrom.

70. The aforesaid acts by Defendant constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

71. The aforesaid acts have caused, and are causing, great and irreparable harm to Plaintiff and the public, including harm to the value and goodwill associated with the FIELDD mark that money cannot compensate. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i), in addition to monetary damages and attorney's fees, Plaintiff is entitled to an order directing the current registrar of FIELDD.com to be changed to Plaintiff's registrar of choice and directing the registrant to be changed to Plaintiff.

## COUNT TWO:
### (Trademark Infringement)

72. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

73. Defendant is using the FIELDD mark in commerce and has no valid rights in the FIELDD mark.

74. Defendant has actual notice of the existence of Plaintiff's trademark rights in the FIELDD mark at least as early as 2020.

75. Use of the FIELDD mark by Defendant is without the permission or authorization of Plaintiff.

76. The aforesaid acts by Defendant have caused and/or are likely to cause confusion, mistake and/or deception among consumers and the public, leading the public falsely to believe that Defendant's website at FIELDD.com is that of, is sponsored or approved by, or is in some way connected with Plaintiff.

77. The aforesaid acts by Defendant constitute direct infringement of Plaintiff's trademark rights in violation of 15 U.S.C. § 1125(a).

78. The aforesaid acts have caused, and are causing, great and irreparable harm to Plaintiff and the public. The harm to Plaintiff includes harm to the value and goodwill associated with the FIELDD mark. Money cannot compensate these harms. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests of this Court:

1. That judgment be entered in favor of Plaintiff on its claims of cybersquatting and trademark infringement.

2. That the Court order the registry for FIELDD.COM to change the registrar to Plaintiff's registrar of choice and, by such registrar, change the registrant to Plaintiff.

3. That the registrar of any other domain names registered by Defendant that resemble or include the FIELDD mark be replaced with Plaintiff's registrar of choice and, by such registrar, change the registrant to Plaintiff.

4. That actual, compensatory, and/or statutory damages of $100,000.00 be awarded against Defendant pursuant to 15 U.S.C. § 1117.

5. That Defendant be required to disgorge all revenues earned from the operation of website to which FIELDD.com resolves.

6. That the Court permanently enjoin Defendant and any agents, servants, employees, successors and assigns, and all those in active concert or participation with them, jointly and severally, from:

        a.        Using any copy or colorable imitation of the FIELDD mark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, printing, importation, production, circulation, or distribution of any product or service, in such fashion as to relate or connect such product or services in any way to Plaintiff, or to any goods sold, manufactured, sponsored, approved by, or connected with Plaintiff;

        b.        Using social media platforms, including YouTube, to promote the FIELDD mark; and

        c.        Engaging in any other activity constituting an infringement of the FIELDD mark, or constituting any damage to Plaintiff's name, reputation, or goodwill.

        7.        That the Court order an award of costs and reasonable attorney's fees incurred by Plaintiff in connection with this action pursuant to 15 U.S.C. § 1117(a);

        8.        That Plaintiff be awarded pre-judgment interest and post-judgment interest on the above damages awards; and

        9.        That the Court order an award to Plaintiff of such other and further relief as the Court may deem just and proper.

Dated: March 8, 2023 By:   /s/ Kirby Drake  
Kirby Drake (TX Bar No. 24036502)
David E. Weslow (for *pro hac* admission)
Adrienne J. Kosak (for *pro hac* admission)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
kbdrake@wiley.law
dweslow@wiley.law
akosak@wiley.law

*Counsel for Plaintiff*
*Fieldd PTY LTD*